UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CLIFFORD HOWARD,

                    Petitioner,

          V.

ROBERT ERCOLE,

                 Respondent.

_____

**REPORT AND
RECOMMENDATION**

99-CV-96

## I. INTRODUCTION

Petitioner Clifford Howard, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254.  Petitioner is an inmate at the Green Haven Correctional Facility.  Petitioner contends that his 1992 conviction in a New York State court was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before the undersigned for a report and recommendation. (Docket No. 99).

## II. BACKGROUND

**A.**    **Facts**

The following factual summary is derived from the trial transcript.  In April of 1991, Petitioner was an inmate at the Auburn Correctional Facility, a maximum security detention

facility. (T at 99, 411).[1]   On April 16, 1991, a prison inmate named Roberto Martinez ("Martinez") was fatally stabbed while walking in a stairwell with a group of prisoners returning to their cells after a recreation period. (T at 100,356,365,375, 384, & 447).

Petitioner was one of the prisoners walking with Martinez. (T at 99).  Corrections Officers Charles Williams Weed III ("C.O. Weed") and Nicholas Anthony De Angelis, Jr. ("C.O. De Angelis") were on the scene and heard the footsteps of someone running away. (T at 104 & 359).  C.O. Weed pursued the footsteps while C.O. De Angelis remained with the prisoners at the scene of the stabbing. (T at 104 & 359).  There were no weapons or contraband found at the scene.  (T at 104, 360, 376 & 386).  Nor was any blood observed on the prisoners who remained at the scene.  (T at 142).

Meanwhile, Petitioner was observed by Corrections Officer Douglas Ricci ("C.O. Ricci") throwing a metal object into an empty cell. (T at 22).  When C.O. Weed caught up to Petitioner, he patted him down and locked Petitioner into his cell.  (T at 26, 113).  C.O. Weed and C.O. Ricci then searched the empty cell and found a "shank," or knife, under the bed.  (T at 28, 125).  No other objects were found in the cell.  (T at 36).

Dr. Janet Ross, a Certified Forensic Pathologist and Cayuga County Coroner, conducted an autopsy of the victim and determined that Martinez died from bleeding around his brain and a partial transection of the cervical spine, both caused by a stab wound.  (T at 454).

On November 12 , 1991, Petitioner was arraigned after a Cayuga County grand jury issued Indictment Number 91-72.  The indictment charged Petitioner with one count of

---

[1] References preceded by "T" are to the pages of the transcript of Petitioner's trial. Defendant was represented by counsel.

2

Murder in the Second Degree, in violation of New York Penal Law ("N.Y.P.L.") §125.25(1) (McKinney 1998),[2] and one count of Promoting Prison Contraband in the First Degree, in violation of N.Y.P.L. §205.25(2).  Petitioner was represented at the arraignment by Douglas P. Bates, Esq., who entered a plea of not guilty on Petitioner's behalf to both charges and indicated that Petitioner would waive his right to a jury trial.

**B.      State Trial Court Proceedings**

The Honorable Robert A. Contiguglia, Cayuga County Court Judge, presided over Petitioner's trial, which began on May 4, 1992.  Earlier, on May 1, 1992, Petitioner signed a waiver requesting a bench trial and waiving his right to a jury trial. (T at 2).   Judge Contiguglia returned his verdict on May 7, 1992, finding Petitioner guilty of Murder in the Second Degree and dismissing the charge of Promoting Prison Contraband in the First Degree.   (T at 609).  On July 14, 1992, Judge Contiguglia sentenced Petitioner to an indeterminate term of imprisonment, the minimum of which would be twenty five years and a maximum term of life in prison, to run consecutively with the sentence he was already serving.  (S at 19)[3].

**C.      State Appellate Proceedings**

Petitioner appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court.  Through his appellate counsel, John A. Cirando, Esq.,

---

[2]Unless indicated, all references to the N.Y.P.L. are to McKinney 1998.

[3]References preceded by "S" are to pages of the transcript of the sentencing proceeding held before Cayuga County Court Justice Robert Contiguglia on July 14, 1992.

Petitioner raised the following arguments in support of his appeal: (1) identification evidence was improperly admitted at trial, (2) the identification evidence was improperly bolstered, (3) the trial court failed to order disclosure of all Rosario[4] materials, and (4) due to the insufficiency of the evidence, the verdict was against the weight of the evidence.

On May 13, 1993, prior to the final determination of his appeal to the Fourth Department, Petitioner moved pursuant to Criminal Procedure Law § 440 to set aside the verdict based upon newly discovered evidence.  (440 M at 2).[5]  To wit, Charles Washington ("Washington"), a prosecution witness, recanted his trial testimony in a subsequent Tier III prison disciplinary hearing.

The trial court thereafter held a hearing based on the recantation and determined that the remaining testimony was still sufficient  to convict Petitioner.  The trial court accordingly dismissed Petitioner's § 440 motion on June 17, 1993.  (440 M at 6-7).  On October 29, 1993, the Appellate Division denied Petitioner's application for leave to appeal the trial court's decision with respect to the § 440 motion.

In a decision issued on November 16, 1994, the Appellate Division, Fourth Department, ruled on Petitioner's original appeal and unanimously affirmed the conviction. People v. Howard, 619 N.Y.S.2d 993 (4th Dep't 1994).  In affirming the conviction, the Fourth Department stated that a pretrial photo array was not unduly suggestive and the identification testimony was properly admitted. Id. at 993.  Further, the court concluded that even if the photo array had been unduly suggestive, "there was a sufficient independent

---

[4]People v. Rosario, 9 N.Y.2d 286 (N.Y. 1961).

[5]References preceded by "440 M" are to pages of the transcript of the 440 Motion proceeding held before Cayuga County Court Justice Robert Contiguglia on June 15, 1993.

basis for the witness's in-court identification of defendant." Id.

In addition, although the appellate court concluded that certain identification testimony was bolstered, the court found that such error was harmless in the context of the overwhelming evidence of defendant's guilt.  Id.  The court also stated that the prosecutor did not fail to turn over Rosario material and that the material defendant requested was not in the People's custody.  Id.  Lastly, the Fourth Department concluded that the evidence supporting defendant's guilt was sufficient and the verdict was not against the weight of the evidence.  Id.

The New York Court of Appeals reviewed Petitioner's appeal from the Fourth Department and affirmed the Appellate Division's decision on February 13, 1996.  People v. Howard, 663 N.E.2d 1252 (N.Y. 1996).

On April 15, 1997, Petitioner filed a second motion with the trial court pursuant to CPL § 440.  This motion asserted that the prosecution committed Brady[6] and Rosario violations and that the verdict should be overturned based upon newly discovered evidence, which consisted of helpful sworn affidavits from two prison inmates at the Auburn Correctional Facility.  On August 26, 1997, the County Court denied the motion, and on March 18, 1998, the Appellate Division denied Petitioner's application for leave to appeal.

## D.   Initial Federal Habeas Corpus Proceedings

Petitioner commenced this action on December 18, 1998,[7] by filing a *pro se* Petition

---

[6]Brady v. Maryland, 373 U.S. 83 (1963).

[7]Although the docket in this case shows that the original Petition was filed on January 21, 1999, pursuant to the "mailbox rule," the actual date of filing was December 18, 1998, when Petitioner gave his petition to prison officials to be mailed under the "mailbox rule."  Houston v. Lack, 487 U.S. 266 (1988).

for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Docket No. 1).  On April 26,

2000, Petitioner amended his original Petition by changing and clarifying the wording of his

original claims.  (Docket No. 24).  Petitioner asserted three claims in his first amended

Petition: (1) that the prosecutor wrongfully withheld Brady material, (2) that he is being held

unlawfully due to the insufficiency of the evidence against him, and (3) that the trial court

erred by denying him a hearing on the issue of recanted testimony.  Respondent filed

submissions in opposition.  (Docket No. 36 & 37).

Petitioner thereafter made a motion to stay the instant habeas proceedings in order

to exhaust one of his claims. On November 15, 2002, that motion was granted by the

Honorable David N. Hurd, United States District Judge for the Northern District of New

York.  (Docket No. 70).


**E.      Further State Court Proceedings**

In papers dated December 4, 2002, Petitioner filed his third motion in state court

pursuant to CPL § 440.  (Docket No. 112 "Exhibit A").  The ground asserted in this motion

was ineffective assistance of counsel.  Specifically, Petitioner argued that his trial attorney

failed to inform him of a letter conveying a plea offer and failed to properly advise him

whether to accept the plea offer.  (Id.).

In response, the People submitted an affidavit from Petitioner's trial court attorney

averring that he sent Petitioner the letter informing him of the plea offer on April 3, 1992.

(Docket No. 112 "Exhibit D").  The prosecution also submitted the actual letter sent by

---

See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) ("We conclude that the district court properly extended
the prison mailbox rule to petitions for writs of habeas corpus.").

Petitioner's trial attorney, which was dated April 3, 1992.  (Docket No. 112 "Exhibit B").

On February 24, 2003, the Cayuga County Court denied Petitioner's § 440 motion without a hearing.  (Docket No. 112 "Exhibit F")[8].  The court reasoned that the letter from Petitioner's trial counsel's office, along with his attorney's sworn affidavit, refuted Petitioner's allegations as to whether trial counsel communicated the plea offer.  (Id.).  Petitioner appealed the trial court's ruling to the Appellate Division, Fourth Department.

On appeal, the Fourth Department reversed the order of the county court and remitted the matter for a hearing.  People v. Howard, 785 N.Y.S.2d 632 (4th Dep't 2004).  The Appellate Division found there was no proof that the letter had actually been mailed to Petitioner and that Petitioner's attorney's affidavit did not conclusively refute Petitioner's allegations.  Id.  Further, the Appellate Division found that the affidavit failed to dispute Petitioner's assertion that his attorney failed to advise him whether to accept or reject the offer.  Id.  As a result, the Appellate Division found that a hearing was required.  Id.

The Honorable Mark H. Fandrich, Acting Cayuga County Court judge, presided over the hearing on remand.   (Docket No. 112 "Exhibit H"[9]).   Petitioner was represented by assigned counsel, David P. Elkovitch, Esq.  (Id.).

After the conclusion of the hearing, Judge Fandrich issued findings of fact and conclusions of law on March 29, 2005.  Judge Fandrich concluded that the issues underlying Petitioner's ineffective assistance of counsel claim could have been raised previously and, in any event, were meritless.  (Id. at 7).  Specifically, Judge Fandrich noted

---

[8]The County Court originally denied the motion on February 11, 2003, but issued an amended decision dated February 24, 2003.

[9]"Exhibit H" is the Memorandum Decision and Order with respect to Petitioner's third CPL § 440 motion and hearing decided by the Honorable Mark H. Fandrich dated March 29, 2005.

that the possibility of a plea was discussed in the transcript of a court appearance on January 14, 1992. (Id.). Although Petitioner was not present during that appearance, he received a copy of that transcript discussing plea negotiations and testified at the hearing that he read and reviewed that transcript prior to preparing his appellate brief. (Id.). Therefore, Petitioner was aware of the possibility of a plea negotiation prior to his appeal. Further, Petitioner was represented by appellate counsel, who could have brought up the issue of the plea offer as well.

Additionally, Judge Fandrich noted that Petitioner's trial attorney had been practicing for thirty years and was experienced in criminal law procedures. (Id.). He found that Attorney Bates's testimony that he mailed the plea offer to Petitioner was supported by the fact that he stamped the letter and signed and dated it for the express purpose of mailing the same to Petitioner. (Id.). Judge Fandrich stated that there was "no reasonable explanation for defense counsel not to have informed Defendant of the plea offer." (Id.). Given that the court found Attorney Bates to be reasonable in all other areas, the court found that it was unreasonable to deduce that Attorney Bates failed to advise Petitioner with respect to the plea offer. (Id.). Therefore, Judge Fandrich denied Petitioner's motion pursuant to CPL § 440. (Id.). Petitioner applied for leave to appeal to the Appellate Division, which was denied on October 24, 2005. (Docket No. 112 "Exhibit I").

## F.     Further Federal Habeas Corpus Proceedings

On August 14, 2006, Petitioner filed a second amended petition for habeas relief. (Docket No. 98). In his Second Amended Petition, Petitioner asserts a new claim for habeas relief, namely, the ineffective assistance of trial counsel claim that was the subject

of his third CPL § 440 motion.  (Id.).

For the reasons that follow, this Court finds that Petitioner's request for habeas corpus relief should be DENIED.

## III. DISCUSSION

### A.    Federal Habeas Corpus Standard

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

While both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, <u>Whitaker v. Meachum</u>, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), AEDPA also requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>LanFranco v. Murray</u>, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  <u>Galarza v. Keane</u>, 252 F.3d 630, 635 (2d Cir. 2001); <u>Whitake</u>r, 123 F.3d at 715 n.1.

In <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  <u>Id</u>.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case."  <u>Id</u>.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id.</u> at 411.  In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence."  <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000)

10

(internal quotation marks omitted).

**B.    Petitioner's Claims**

Petitioner asserts a single claim in support of his Second Amended Petition — that he was deprived of effective assistance of counsel.  Respondent argues that the Second Amended Petition is (1) time barred, (2) procedurally barred, and (3) meritless.  (Docket No. 109).

**1.    Statute of Limitations - Original Petition**

The original habeas petition was filed after the effective date of AEDPA, and thus, it is subject to a one-year statute of limitations, which runs from the latest of the following four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

**a.    Calculation of Timeliness Using Section 2244(d)(1)(A)**

11

For most petitioners, Section 2244(d)(1)(A) sets the applicable starting point for the one-year period of limitations.  Petitioner's conviction was affirmed by the Appellate Division on November 16, 1994, and by the Court of Appeals on February 13, 1996.

A conviction becomes final ninety (90) days after the final decision of the highest state court.  The ninety (90) day period represents the time in which a defendant must file a petition for a writ of certiorari with the U.S. Supreme Court seeking further review of his state court conviction.  Where, as here, a state prisoner does not seek certiorari, the conviction becomes final no later than the expiration of the ninety-day period for filing such a petition. See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir.), cert. denied, 534 U.S. 924, 122 S.Ct. 279, 151 L.Ed.2d 205 (2001); see also S.Ct. R. 13(1) (establishing 90-day period for filing petition for writ of certiorari).

Thus, Petitoner's conviction became final on May 13, 1996, ninety days after the Court of Appeals' decision.  Therefore, Petitioner had until May 13, 1997, to either file his habeas petition pursuant to 28 U.S.C. § 2254, or a collateral attack in state court.

Petitioner did not file his original petition for habeas relief until December 18, 1998, approximately one year and seven months after the one-year period of limitation expired pursuant to Section 2244(d)(1)(A).

Nevertheless, the limitations period is tolled while a petitioner seeks post-conviction relief in the state courts.  28 U.S.C. § 2244 (d)(2).   In this case, Petitioner filed his second C.P.L. § 440.10 motion on April 15, 1997.[10]  This motion operated to toll the running of the limitations period, because it was filed approximately one month before the statute of

---

[10]The filing of the *first* § 440 motion did not toll the statute, because that motion was filed and resolved while the conviction was under direct review by the Fourth Department.

limitations would have expired under Section 2244 (d)(1)(A).

On August 26, 1997, the County Court denied the motion, and on March 18, 1998, the Appellate Division denied Petitioner's application for leave to appeal.  Therefore, because he had one month remaining on the limitations period when he filed the 440 motion, Petitioner had until April 16, 1998 to file his habeas corpus petition in this case.

Based on the record initially provided to this Court, the original Petition (Docket No. 1), which was filed several months after the April 1998 deadline, initially appeared untimely.

However, Petitioner states in his Traverse (Docket No. 116) that on April 16, 1998, he made application for leave to appeal the Appellate Division's March 18, 1998 decision to the Court of Appeals. (Docket No. 116 at 3-4).  This would operate to further toll the statute of limitations.  The Court of Appeals certificate denying Petitioner's leave to appeal application, dated December 8, 1998, was provided to this Court for the first time as an exhibit to the Traverse.  See (Docket No. 116 "Exhibit C"). [11]

Because Petitioner filed his leave application with the Court of Appeals on the day that the statute of limitations expired, he needed to file his habeas corpus petition on the day the order denying his leave to appeal was filed, which in this case was December 8, 1998.  As a consequence, the instant Petition, which was filed ten (10) days later on December 18, 1998, is untimely.

---

[11]Although Petitioner claims in his Traverse that he included a copy of his application to the Court of Appeals in his original Petition (Docket No. 1), the Court cannot find any such applications.  Further, no mention is made of the application or the date it was filed in any of the previous petitions.  However, Petitioner does include a copy attached to his Traverse of his application cover letter dated April 16, 1998 as well as the certificate dismissing his application for leave to appeal from the Court of Appeals, dated December 8, 1998.

Petitioner claims that "based upon information and belief [he] did not receive the Certificate by the Court of Appeals dated 12/8/98 until December 17, 1998" and that therefore, the statute of limitations should have continued to be tolled until he actually received the Certificate.  (Docket No. 116 at 4).

Petitioner's argument is unavailing.  The habeas limitation period runs, not from the time when the petitioner is served with a document, but rather from "the date on which the judgment becomes final." 28 U.S.C. § 2244 (d)(1).  As such, "[t]he relevant date of final disposition is the date of issuance of a court order, not the date upon which such order is received by petitioner." Evans v. Senskowski, 228 F. Supp. 2d 254, 259 (E.D.N.Y. 2002) (citing Geraci v. Senkowski, 211 F.3d 6, 9 (2d Cir. 2000)); see also Anderson v. O'Gara, No. 01-Civ-5712, 2002 WL 1633917, at *3 (S.D.N.Y. July 23, 2002).  Accordingly, this Court finds that the instant Petition is untimely.

This does not, however, end the inquiry.  The one-year AEDPA filing period is not jurisdictional and is subject to equitable tolling.  The Second Circuit has recognized the court's authority to equitably toll AEDPA's one-year limitations period, but has held that "[e]quitable tolling applies only in the 'rare and exceptional circumstance.'" Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).  As this Court has previously noted, "[i]n order to justify equitable tolling . . ., the petitioner must show that 'extraordinary circumstances' prevented him from filing his petition on time." Gant v. Goord, 430 F. Supp. 2d 135, 139 (W.D.N.Y. 2006).  In addition, the petitioner must show that the alleged extraordinary circumstances were "beyond his control." Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001).

Because this case involves a *pro se* Petitioner who was incarcerated during the

14

relevant time period, equitable tolling is arguably appropriate.  See, e.g. Vasquez v. Greiner, 68 F. Supp.2d 307, 310 (S.D.N.Y. 1999) ("Where a petitioner, through no fault of his own, first learns of the outcome of a final appeal after the time for seeking habeas has expired, equitable tolling is appropriate."); Armand v. Strack, No. CV 98-6650, 1999 WL 167720, at *2-*4 (E.D.N.Y. Feb. 19, 1999).  However, this Court need not reach the question of whether equitable tolling is warranted in this particular case.  As set forth below, the Second Amended Petition does not relate back to the original Petition and is therefore untimely in its own right.  Moreover, even upon a consideration of the merits, this Court finds that Petitioner is not entitled to relief.

### 2.      Second Amended Petition

#### a.      Relation Back To Original

Under Rule 15 of the Federal Rules of Civil Procedure, amendments to a pleading may not be made after the statute of limitations has expired unless the amendment relates back to the date of the original timely pleading. Fed.R.Civ.P. 15(a). In applying this rule, amendments are deemed to "relate back" to the original pleading if "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed R. Civ. P. 15(c)(2).

In the present case, even assuming Petitioner's original Petition was timely, his Second Amended Petition (Docket No. 98), which states an entirely new claim for ineffective assistance of counsel, was filed after the statute of limitations had expired and does not "relate back" to the original Petition.

The Supreme Court examined the operation of Rule 15's "relation back"

requirement in the habeas context in <u>Mayle v. Felix</u>, 545 U.S. 644, 656-57, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005).  There, the Supreme Court rejected the claim that a petitioner's "trial, conviction, or sentence" constitute the "conduct, transaction, or occurrence" contemplated by Rule 15; otherwise, all amendments would relate back because "virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." <u>Id.</u> at 657 (citation omitted).

Instead, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." <u>Id.</u> at 664; <u>see</u> <u>also</u> <u>id.</u> at 659 ("[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims.") (citing, inter alia, 6A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1497, p. 85 (2d ed.1990)).

Petitioner cannot argue that his Second Amended Petition "relates back."  In fact, Petitioner as much as concedes in his Traverse that his Second Amended Petition does not relate back.  (Docket No. 116 at 7).

The original Petition asserted claims of prosecutorial misconduct, insufficiency of the evidence, and alleged improper denial of a post-trial hearing on recanted testimony. Petitioner's ineffective assistance of counsel claim is based upon the argument that his trial attorney failed to convey a plea offer.  There is no common core of operative facts that unites the original claims and the newly asserted ineffective assistance of counsel claim. In other words, the "essential predicate" of Petitioner's ineffective assistance of counsel claim rests upon a distinct factual event, *i.e.* the alleged failure to communicate a plea offer, than the facts underlying his original claims.  Accordingly, even if the original Petition was

16

timely, the claim raised in the Second Amended Petition does not "relate back" pursuant to Rule 15. See Porter v. Greiner, No. CV 00-6047, 2005 WL 3344828, at *10 (E.D.N.Y. Nov. 18, 2005) (finding that ineffective assistance of counsel claim did not relate back); Toland v. Walsh, 02-CV-0399, 2007 WL 1480918, at *1 (N.D.N.Y. May 18, 2007) (same).

### b.    Section 2244(d)(1)(D) and Claims of "Newly Discovered Evidence"

Although the ineffective assistance of counsel claim does not "relate back" to the original Petition, it is arguably based upon "newly discovered evidence."  As such, it is necessary for this Court to determine whether Petitioner might be entitled to an extension of the limitations period pursuant to § 2244 (d)(1)(D).

When a petitioner asserts a claim of "newly discovered evidence," Section 2244(d)(1)(D) allows for a later start to the limitations period, namely, the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

### 1) The "Newly Discovered Evidence"

In the present case, the "new evidence" that Petitioner claims to have discovered is a plea offer letter, dated March 30, 1992, from the prosecution, which Petitioner claims his trial attorney never presented to him.  Petitioner alleges that he did not become aware of the letter until June 10, 2002.  See (Docket No. 98 at 7).

However, while Petitioner asserts that he did not become aware of the plea offer until June 10, 2002, Judge Fandrich concluded that Petitioner could have raised this claim much sooner.  (Docket No. 112 "Exhibit H").  Specifically, after conducting a hearing with respect to the plea letter issue, Judge Fandrich noted that the possibility of a plea was

17

discussed in the transcript of a court appearance on January 14, 1992. (Id.). Although Petitioner was not present during that appearance, he received a copy of that transcript discussing plea negotiations, and he testified that he read and reviewed that transcript prior to preparing his appellate brief in 1997, several years prior to June 2002. (Id.). As such, the factual record, as determined by the state court, undermines Petitioner's claim that he did not learn of the plea letter until 2002.

### 2)      Calculation of Timeliness

However, for the sake of argument, the Court will assume that the June 10, 2002 letter concerning the plea offer constitutes "newly discovered evidence" and that Petitioner is therefore entitled to obtain the benefit of a later start to the statute of limitations under Section 2244(d)(1)(D).

The relevant date for determining when to start the clock running under that subsection is the date "on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Courts in this Circuit have held, in the context of this so-called "newly discovered evidence" provision of AEDPA, that the limitations period " 'runs from the date a petitioner is on notice of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim.'" Lucidore v. New York State Div. of Parole, No. 99 Civ. 2936(AJP), 1999 WL 566362, at *5 (S.D.N.Y. Aug.3, 1999) (quoting Youngblood v. Greiner, 97 Civ. 3289, 1998 WL 720681, at *4 n. 4 (S.D.N.Y. Oct.13, 1998) and citing Flanagan v. Johnson, 154 F.3d 196, 198-99 (5th Cir.1998) (petitioner's factual predicate that he did not know he had the right not to testify was established when he first executed an affidavit setting forth the legal and factual basis for

18

his claim; "Section 2244(d)(1)(D) does not convey a statutory right to an extended delay, in this case more than seven years, while a habeas petitioner gathers every possible scrap of evidence that might ... support his claim.")), aff'd, 209 F.3d 107 (2d Cir.2000), cert. denied, 531 U.S. 873, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000); accord Hector v. Greiner, No. 99 CV 7863 FB, 2000 WL 1240010, at *4 (E.D.N.Y.2000); Foy v. Sabourin, No. 02 Civ. 7094(DLC), 2004 WL 574655, at *3 (S.D.N.Y.2004); Brown v. Keane, No. 97 CIV. 3302(MBM), 1998 WL 148334, at *3 (S.D.N.Y.1998).

As stated above, the finding of the §440 court, on the other hand, is that through the exercise of due diligence, Petitioner could have raised his claim in 1997. See (Docket No. 112 "Exhibit H").  However, the Court, will again assume for the sake of argument that Petitioner was not put on notice of the facts supporting his claim until the date he received the letter from his trial attorney regarding the plea offer; according to Petitioner, this was June 10, 2002.  See (Docket No. 98 at 7).

Even giving Petitioner the benefit of the doubt and treating June 10, 2002, as the commencement of the one-year limitations period under 28 U.S.C. § 2244(d)(1)(D), his Second Amended Petition is still untimely.  One year from June 10, 2002, is June 10, 2003. Thus, Petitioner would have had to have filed his federal habeas petition on or before June 10, 2003.  In the alternative, as is the case here, Petitioner could have tolled the limitations period by filing a collateral attack on his conviction in state court on or before June 10, 2003.  See 28 U.S.C. § 2244(d)(2).

On December 4, 2002, after approximately six months expired, Petitioner filed his third motion in state court pursuant to CPL § 440.  (Docket No. 112 "Exhibit A").  Therefore, the statute of limitations was tolled until the conclusion of the third CPL § 440 motion on

19

March 29, 2005, and the denial of Petitioner's appeal to the Appellate Division on October 24, 2005. (Docket No. 112 "Exhibit I" & Docket No. 98 at 6). Petitioner had six months remaining from that point to file his Second Amended Petition. However, the Second Amended Petition was filed on August 15, 2006, nearly ten months after the October 24, 2005 denial from the Appellate Division. Even giving Petitioner every benefit of tolling possible, the one-year limitation period clearly had run before the date he filed his Second Amended Petition. No matter how the dates are construed, the Second Amended Petition is untimely.

### 3)      Equitable Tolling

As noted above, because AEDPA's one-year period has been held to be a statute of limitations rather than a jurisdictional bar, federal courts may equitably toll the period. See Smith, 208 F.3d at 17. Equitable tolling applies only in the "rare and exceptional circumstance." Id. (citation omitted). In order to justify equitable tolling of the one-year period of limitations, the petitioner must show that "extraordinary circumstances" prevented him from filing his petition on time. See id. (citing Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir.1996) (noting that the Second Circuit has applied equitable tolling doctrine " 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights ....' ") (citation omitted)).

Furthermore, the petitioner seeking equitable tolling must have acted with "reasonable diligence" throughout the period he seeks to toll. See id. The petitioner furthermore must demonstrate a causal relationship "between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence,

could have filed on time notwithstanding the extraordinary circumstances." <u>Valverde v. Stinson</u>, 224 F.3d 129, 134 (2d Cir.2000); <u>Hizbullahankhamon v. Walker</u>, 255 F.3d 65, 76 (2d Cir.2001).

Petitioner in this case does not seek equitable tolling and has made no showing of "extraordinary circumstances" that would have prevented him from filing his Second Amended Petition in a timely fashion.  Accordingly, the Second Amended Petition should be DISMISSED as untimely filed.

### 3.    Ineffective Assistance of Counsel

Lastly even if this Court were to find the Second Amended Petition timely, Petitioner's claim for habeas relief is meritless.  Petitioner's sole claim for habeas relief in his Second Amended Petition is that he received ineffective assistance of counsel in the plea bargaining stage of the trial court proceedings.  This claim was adjudicated on the merits in state court through Petitioner's CPL § 440 motion and hearing and the denial of Petitioner's applications for leave to appeal by the Appellate Division and Court of Appeals.

For the reasons that follow, Petitioner is unable to demonstrate that the state court determination was either contrary to, or based upon an unreasonable application of clearly established Supreme Court law or based upon an unreasonable factual determination in light of the evidence presented.  28 U.S.C. § 2254(d)(1).

In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a habeas petitioner must satisfy a two-part test.  First, a petitioner must demonstrate that counsel's performance was so deficient that counsel was

not functioning as "counsel" within the meaning of the Sixth Amendment to the Constitution. Id. at 688, 104 S.Ct. 2052.   In other words, a petitioner must show that his attorney's performance "fell below an objective standard of reasonableness." Id.  Second, a petitioner must show that counsel's deficient performance prejudiced him. Id. at 694, 104 S.Ct. 2052. The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate.  "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697, 104 S.Ct. 2052.

On December 4, 2002, after being denied two other CPL § 440 motions and other appeals of his conviction, Petitioner filed his third motion in state court pursuant to CPL § 440.  (Docket No. 112 "Exhibit A").  For the first time, Petitioner raised a claim based on a theory of ineffective assistance of counsel.  As discussed above, Petitioner claimed that his trial counsel, Douglas Bates ("Bates"), was ineffective for failing to convey a plea offer to him.  Petitioner claimed that he did not become aware of the plea offer until June of 2002.

After a hearing, Judge Mark Fandrich, who presided over Petitioner's § 440 hearing, found the claim to be without merit. The Appellate Division and Court of Appeals both later denied Petitioner leave to appeal that decision.  See (Docket No. 112 at "Exhibit H" & "Exhibit I").    Specifically, Judge Fandrich found that Petitioner had all the information he needed to raise this claim in his previous appeals of his conviction.

> A transcript of the January 14, 1992 pre-trial motion proceeding dated June 22, 1993, at which the possibility of plea bargain was discussed, was filed in this Court on that date.  The Defendant was provided with a copy of that transcript in the process of perfecting the initial appeal of his conviction to the

Appellate Division in 1994. Defendant testified that he read and reviewed the transcript prior to preparation of his appellate brief. Defendant was in a position to raise this issue underlying his present motion at this April 15, 1997 CPL 440 Motion, but did not do so. On that basis, this Court may deny his motion to vacate the judgment. See CPL 440.10(3)(c).

(Docket No. 112 at "Exhibit H" p. 6).

Judge Fandrich also noted that Petitioner was represented by appellate counsel at that time. (Id.). Additionally, Judge Fandrich found Bates' testimony at the 440 hearing to be credible and accepted his testimony. (Id.). Bates testified that he received a plea offer letter dated March 30, 1992 that he forwarded to Petitioner. While Bates could not specifically remember forwarding the letter to Petitioner, he had a letter in his file indicating that he forwarded the plea offer letter to Petitioner on April 3, 1992. (Id. at 7). Bates also testified that although he had no independent recollection of discussing the plea offer with Petitioner, he could not conceive of why he would fail to do so, especially in light of the fact that Petitioner was facing a life sentence of imprisonment.

As Judge Fandrich found, at the time of Petitioner's trial proceedings, Bates had been practicing law for over thirty years and was "well versed in the criminal law and its procedures which is evident from the circumstances of his representation in this case when viewed in their totality." (Id.). Moreover, even if trial counsel was ineffective, Judge Fandrich noted that Petitioner did not offer any evidence of prejudice as there was no testimony at the § 440 hearing that he would have accepted the plea offer in any event. (Id. at 8).

The § 440 court's findings of fact must be afforded deference by this Court. Under AEDPA, federal courts must give substantial deference to a state court determination that

has adjudicated a federal constitutional claim "on the merits." 28 U.S.C. § 2254(d); <u>Sellan</u> <u>v. Kuhlman</u>, 261 F.3d 303, 309-10 (2d Cir.2001).  Judge Fandrich's findings are entitled to a presumption of correctness, which Petitioner has failed to rebut with clear and convincing evidence.[12]   28 U.S.C. § 2254(e)(1);   <u>Leslie v. Artuz</u>, 230 F.3d 25 (2d Cir. 2000).

Even if this Court were not inclined to afford great deference to the trial court's findings of fact, the Appellate Division's determination is also entitled to great deference, as it adjudicated Petitioner's claims on the merits.[13]  <u>See</u> (Docket No. 112 "Exhibit I"); <u>see</u> <u>also</u> 28 U.S.C. § 2254(d); <u>Sellan</u>, 261 F.3d at 309-10. The Second Circuit has held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  <u>Id.</u> at 312-313.     Petitioner has failed to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); <u>LanFranco v.</u> <u>Murray</u>, 313 F.3d 112, 117 (2d Cir. 2002).  Accordingly, because Petitioner has failed to show that the state courts' determination of the merits of his claim of ineffective assistance of counsel was either contrary to or an unreasonable application of clearly established Federal law, his claim for habeas relief should be DISMISSED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Clifford Howard's Second Amended Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied,

---

[12]Although Petitioner correctly notes in his Amended Petition that Judge Fandrich erred in finding that counsel visited him twice in prison, that fact has no bearing on the facts set forth above to which the Court gives deference to in making its determination in this case.

[13]The presumption of correctness applies to findings by both state trial and appellate courts. <u>Galarza</u>, 252 F.3d at  635; <u>Whitaker</u>, 123 F.3d at 715 n.1.

and that the Petition be dismissed.  Further, because Petitioner has failed to make a substantial showing of a denial of a constitutional right, this Court recommends that a certificate of appealability not issue. See 28 U.S.C. § 2253(c)(2) (1996).


                                        Respectfully submitted,




DATED:        June 11, 2007
              Syracuse, New York

                                        _____
                                        Victor E. Bianchini
                                        United States Magistrate Judge




**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

June 11, 2007

Victor E. Bianchini
United States Magistrate Judge